# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> *Petitioners*, <br><br> v. <br><br> NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, et al.; <br><br> *Respondents*. <br><br> CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Petitioners*, <br><br> v. <br><br> NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, et al.; <br><br> *Respondents*. <br><br> ZERO EMISSION TRANSPORTATION ASSOCIATION, <br><br> *Petitioners*, <br><br> v. <br><br> NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, et al.; <br><br> *Respondents*. | Case No. 25-8019 (and consolidated cases) |

**UNOPPOSED MOTION FOR ABEYANCE**

Petitioners in Case Nos. 25-1595 (State and Local Government Petitioners)

25-1642 (Public Interest Organization Petitioners), and 25-1846 (Zero Emission

1

Transportation Association, or ZETA) hereby move the Court to place these cases in abeyance pending the ongoing rulemaking by the National Highway Traffic Safety Administration (NHTSA) to amend fuel economy standards.

Prior to the lapse in appropriations for the U.S. Department of Justice, Petitioners and Respondents had been actively discussing whether to file a joint motion to hold these consolidated cases in abeyance. *See* ECF No. 118333520, at 2. As explained further *infra*, ZETA supports a partial abeyance of these cases as to the challenge to NHTSA's statutory interpretation adopted in the rule on review, which is common to all three petitions. ZETA opposes abeyance of the cases in their entirety because it wishes to challenge now NHTSA's implementation of its new statutory interpretation in certain compliance and enforcement actions.

Because of the lapse in appropriations, Respondents are no longer able to participate in the parties' previous efforts to prepare a joint motion. Respondents do not oppose Petitioners' motion to hold the cases in abeyance as to the common challenge to the statutory interpretation adopted in the rule on review. Respondents believe, however, that these cases should be held in abeyance in their entirety and expect to file a motion for such relief after appropriations are restored.

## BACKGROUND

All three of the present petitions challenge NHTSA's newly adopted interpretation of the statute governing fuel economy standards, the Energy Policy

2

& Conservation Act (EPCA), 49 U.S.C. § 32901 *et seq.*, and specifically, the provision restricting how and when NHTSA may consider certain fuel economy values assigned to electric and plug-in hybrid vehicles. 49 U.S.C. § 32902(h) (the EV Restriction). On June 11, 2025, NHTSA published an action styled as an interpretive rule titled *Resetting the Corporate Average Fuel Economy Program*, 90 Fed. Reg. 24,518 (June 11, 2025) (the Rule), that adopted a different interpretation of the EV Restriction than it had applied in recent rulemakings for Corporate Average Fuel Economy (CAFE) standards for passenger cars and other fuel economy standards for medium- and heavy-duty vehicles (MDHD standards).

NHTSA's new interpretation of the EV Restriction is similar to the one urged by the petitioners in challenges to NHTSA's 2021 and 2024 rulemakings, which set fuel economy standards for model years 2024–2026 and 2027–2031; those challenges, currently in abeyance, are *Natural Resources Defense Council v. NHTSA*, Case No. 22-1080 (D.C. Cir.) and *In re: MCP No. 189 Corp Avg Fuel Econ (NHTSA-2023-0022)*, Case No. 24-7001 (6th Cir.). Broadly speaking, the parties in the present case are also parties in those cases and are well versed in the intricacies, both legal and factual, of the questions presented in these petitions.

### A. The Parties' Dispute over the EV Restriction

EPCA directs the Secretary of Transportation to "prescribe by regulation average fuel economy standards" that are "the maximum feasible average fuel

economy level that the Secretary decides the manufacturers can achieve in that model year." 49 U.S.C. § 32902(a). "Maximum feasible average fuel economy" is, in turn, determined according to four statutory factors set out in subsection (f). *Id.* § 32902(f). EPCA provides for credit trading between automobile manufacturers, such that an automaker producing a fleet with an average fuel economy exceeding the CAFE standard can generate and sell compliance credits to automakers, who may then use such credits to meet their own obligations. *Id.* § 32903(a), (f).

The EV Restriction states: "In carrying out subsections (c), (f), and (g) of [Section 32902], the Secretary of Transportation— (1) may not consider the fuel economy of dedicated automobiles." *Id.* § 32902(h)(1); *see id.* § 32901(a)(8) ("dedicated automobiles" include electric vehicles). The other subparagraphs of subsection (h) restrict NHTSA's consideration of plug-in hybrid vehicles (called "dual fueled automobiles") and credit trading. *Id.* § 32902(h)(2), (3). The parties have made arguments about the scope of the EV Restriction based on both the statutory text and its practical effects on standard-setting.

### B. The Rule

In the Rule, NHTSA interprets the EV Restriction as requiring the agency to eliminate electric and plug-in vehicles from the standard-setting analysis in future rulemakings. 90 Fed. Reg. at 24,518, 24,522–23. The Rule states that it does not itself change existing fuel economy standards. *Id.* at 24,525. "Instead, this

4

interpretation lays the appropriate groundwork for standard-setting rulemakings that will reset the agency's regulatory programs." *Id.* "Pending the rulemaking process for the establishment of replacement standards, NHTSA will exercise its enforcement authority with regard to all existing CAFE and MDHD standards in accordance with the interpretation set forth in this rule." *Id.* at 24,526. NHTSA's reference to future rulemakings to amend standards is consistent with the Transportation Secretary's January 28, 2025, directive to NHTSA "at the earliest opportunity to propose the rescission or replacement of any fuel economy standards as determined necessary to bring the CAFE program into compliance with Administration policy and the requirements of the law."[1] A proposed rule amending CAFE standards is pending review as of September 2025 at the White House Office of Management and Budget.[2]

    As ZETA explains in its petition for review, NHTSA has—in express reliance on the Rule—refused to issue notifications to automakers regarding their compliance with applicable federal fuel economy standards. Because NHTSA has

---

[1] Secretary Sean P. Duffy, *Memorandum: Fixing the CAFE Program* (Jan. 28, 2025), available at https://www.transportation.gov/sites/dot.gov/files/2025-01/Signed%20Secretarial%20Memo%20re%20Fixing%20the%20CAFE%20Program.pdf.

[2] White House Office of Management & Budget, Office of Info. & Reg. Affairs, "Regulatory Actions Currently Under Review by Agency," https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202504&RIN=2127-AM76 (last visited Oct. 8, 2025).

not yet issued compliance notifications, it likewise cannot transfer credits earned by automakers (including ZETA members) for exceeding applicable fuel economy standards to other automakers who have already contracted to purchase those credits to meet their own compliance obligations.

## ARGUMENT

The Court should hold the above-captioned consolidated cases in partial abeyance pending NHTSA's forthcoming rulemaking to amend fuel economy standards as to the common challenge to NHTSA's interpretation of the EV Restriction. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). An abeyance here will promote judicial economy and conserve the parties' resources in multiple ways.

*First*, the same statutory interpretation dispute over the EV Restriction's application presented in these petitions will very likely be central to any future challenges to the amended fuel economy standards NHTSA is planning to propose. The Petitioners believe that when applied in future CAFE rulemakings, the interpretation adopted by NHTSA in the Rule will decrease the stringency of future standards, and Petitioners will very likely challenge the amended standards on the basis that NHTSA's new interpretation is contrary to statute. Indeed, one of the

6

Petitioners' primary objectives for bringing the present challenges was to preserve a challenge to this legal interpretation in the event a challenge to it in a future rulemaking was deemed untimely. However, Petitioners agree that litigating these issues as applied in rulemakings to amend or prescribe standards, rather than in the abstract, will be a more efficient use of the parties' and the Court's resources.

*Second*, the parties anticipate that NHTSA's forthcoming rulemaking will concretize several statutory interpretive issues that will aid judicial review. Based on their experience briefing the EV Restriction, the parties believe many arguments about the practical effects of the interpretation are better presented in the context of an administrative record that implements the statutory interpretation set out in the Rule.

The State and Local Government Petitioners and Public Interest Organization Petitioners believe an abeyance will not prejudice their interests in ensuring fuel economy standards are the "maximum feasible" as required by law. Especially given the proposed CAFE amendments pending on OMB's regulatory dashboard, Petitioners expect NHTSA will complete its rulemaking expeditiously. If NHTSA's rulemaking is delayed or other changed circumstances show a more urgent need for resolution, Petitioners may move to lift the abeyance.

ZETA has no objection to an abeyance of Petitioners' challenges related to the EV Restriction's statutory interpretation. However, in addition to the challenge

7

to the EV Restriction, ZETA brings additional claims beyond the EV Restriction challenge, including a challenge to the Rule's announcement that NHTSA "will exercise its enforcement authority with regard to all existing CAFE and MDHD standards in accordance with the interpretation set forth in th[e] rule." 90 Fed. Reg. at 24,526. ZETA asserts this aspect of the Rule—in particular, the refusal to issue compliance notifications—is causing ZETA's members concrete harm now, especially because of prior delays in processing compliance reports. Any delay in resolution of this case would further harm ZETA's members. Because ZETA wishes to pursue that challenge now, it does not consent to an abeyance of the entire case. ZETA believes it can litigate NHTSA's unlawful application of the Rule to suspend compliance notifications independently of the proper statutory interpretation of the EV Restriction, and thus it does not oppose abeyance as to that common issue among the petitions.

The State and Local Government Petitioners and the Public Interest Organization Petitioners take no position as to whether the unique challenge raised in ZETA's petition should be placed in abeyance, and agree that that challenge can proceed independently of the common challenge to the Rule's reinterpretation of the EV Restriction.

WHEREFORE, this motion requests that this Court hold these cases and all associated deadlines in abeyance as to the EV Restriction's proper interpretation,

pending NHTSA's final rule amending and/or promulgating new CAFE standards, and that the abeyance remain in place until 30 days after the issuance of such a final rule, with motions to govern further proceedings due upon expiration of the abeyance period. Petitioners propose that Respondents update the Court with status reports every 90 days, and Respondents do not oppose this request.

Dated: October 8, 2025                                  Respectfully Submitted,

**Rob Bonta**
Attorney General of California

By: *Theodore McCombs*
DAVID ZAFT
Acting Supervising Deputy Attorney General
THEODORE A. MCCOMBS
Deputy Attorney General
Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
Tel.: (619) 738-9003
Theodore.McCombs@doj.ca.gov

*Lead counsel for State and Local Government Petitioners*

/s/ *David Pettit*
DAVID PETTIT
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Tel: (510) 844-7100
dpettit@biologicaldiversity.org

LIA COMERFORD
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
T: (971) 717-6420
lcomerford@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

/s/ *Megan M. Herzog*
SEAN H. DONAHUE
MEGAN M. HERZOG
Donahue, Goldberg & Herzog
1008 Pennsylvania Avenue, SE
Washington, DC 20003
Tel: (650) 353-8719
sean@donahuegoldberg.com
megan@donahuegoldberg.com

ANDREW P. SU
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
Tel: (303) 447-7236
asu@edf.org

*Counsel for Environmental Defense Fund*

/s/ *Julia K. Forgie*
JULIA K. FORGIE
Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401
Tel: (310) 434-2351
jforgie@nrdc.org

ATID KIMELMAN
Natural Resources Defense Council
111 Sutter Street
San Francisco, CA 94104
Tel: (415) 875-6100
akimelman@nrdc.org

*Counsel for Natural Resources Defense Council*

/s/ *Joshua A. Berman*
JOSHUA A. BERMAN
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
Tel: (202) 650-6062
josh.berman@sierraclub.org

*Counsel for Sierra Club*

*/s/ Meghan E. Greenfield*
MEGHAN E. GREENFIELD
ELIZABETH H. STARR
Jenner & Block LLP
1099 New York Ave., NW Suite 900
Washington, DC 20001
Tel.: (202) 637-6000
mgreenfield@jenner.com

*Counsel for Zero Emission Transportation Association*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that:

1.　　This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because the motion, excluding those items listed in Fed. R. App. P. 32(f), contains 1,650 words and thus does not exceed the 5,200 word limit.

2.　　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(b) because the brief has been prepared in proportionally spaced typeface using Microsoft Word word-processing system in Times New Roman that is at least 14 points.

Dated: October 8, 2025

　　　　　　　　　　　　　　　　　　　/s/　　*Theodore McCombs*
　　　　　　　　　　　　　　　　　　THEODORE A. MCCOMBS

## CERTIFICATE OF SERVICE

I hereby certify that on this October 8, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: October 8, 2025

                                                       */s/ Theodore McCombs*  
                                                       Theodore McCombs